## UNITED STATES v. CERTAIN LANDS LOCATED IN TOWN OF HIGHLANDS, ORANGE COUNTY, et al.

District Court, S. D. New York.

Aug. 29, 1944.

Harry T. Dolan, of Brooklyn, N.Y., for plaintiff.

Kopald & Haft, of Highland Falls, N.Y., for defendants Libbie S. Motak, Lawrence E. Gibney, Elizabeth Gibney Graber, Rosanna C. Gibney, William J. Vopasek, Arthur C. Trautz, and Union Free School Dist. No. 2 of the Town of Highlands.

BRIGHT, District Judge.

These two condemnation proceedings were consolidated by a judgment and order filed January 19, 1943. The commissioners made their award September 9, 1943. The motion to confirm made by government counsel is opposed only by the defendants represented by Kopald & Haft, Esqs.

The property involved is described in the petition originally filed in Civ. 17—491. The following tabulation shows the extent of the property taken, the owner, the

award, and the proof of value of each party:

| | Parcel No. and amt. taken | Owner | Land | Award Bldgs | Total | Proof of value Owners | Govmt |
|---|---|---|---|---|---|---|---|
| 1A | 145.43 acres | Libbie S. Motak | 9662 | 16030. | 25,692 | 59000. | 20000 |
| 1B | .06 " | | | | | | |
| | Bungalow | Arthur C. Trautz | | 450. | 450 | 792. | 400 |
| | " | Wm. J. Volpasek | | 450 | 450 | 782. | 450 |
| 11A | 82.78 A | Eliz. G. Graber | 13067 | 5700 | 18,767 | 30025 | 14000 |
| D | 13.32 A | Rosanna C. Gibney | 2125 | 6300 | 8,425 | 11830 | 7000 |
| B | .77 A | Lawrence E. Gibney | 6000 | 14400 | 20,400 | 36525.50 | 15000 |
| E | 34.36 A | | | | | | |
| 111A | 59.079A | Eliz. G. Graber | 4461 | 750 | 5,211 | 19212.50 | 4250 |
| B | 10.861A | | | | | | |
| C | 2.91 A | Rosanna C. Gibney | | | | | |
| School Lot | .27 A | School District | 100 | 1800 | 1,900 | 3500. | 1200 |

The commissioners reported that all other improvements not specifically enumerated have been included in the total valuation of land and buildings and are reflected in the total valuation set forth. The amounts awarded as to parcels 1A and B, 11A and D and B and E, and parcels 111A, B and C include the value of that part of Long Pond heretofore adjudged to be owned by Libbie S. Motak, Elizabeth Gibney Graber, Rosanna C. Gibney and Lawrence E. Gibney.

It is well settled that after an award these objectors carry a heavy burden to show that it is either so insufficient as to shock the conscience of the court, or is based upon some erroneous theory of law, or is the result of improper or illegal admission or rejection of evidence, or of such misconduct as to indicate plain partiality, prejudice or corruption. The commissioners, having viewed the property, are expected to exercise their own judgment, derived from personal knowledge along with the opinions and other evidence brought before them. They are not bound by the opinions expressed and may give their own conclusions.

The attack here is upon the grounds (1) that the awards are so insufficient as to shock the conscience of the court, (2) that certain evidence was improperly re-

jected, and (3) that the school district parcel was not properly valued.

1. The contention that the awards are so insufficient as to shock the conscience of the court has required an examination of the 798 pages of testimony and the numerous exhibits offered by the objecting defendants. It appears that before making their report, the commissioners had viewed the various properties on two occasions.

The Libbie S. Motak Property
Parcels 1A and B

There were 145.43 acres in A and .06 in B. The residence, garage and many other improvements were located on parcel A, which surrounded the Round Pond Military Reservation of 49.58 acres, containing Round Pond, a part of the West Point water system and from which led, over the Motak property, the necessary pipe line. The residence and its surrounding improvements were about a mile from Long Pond, were very attractive, and constituted a picturesque and obviously comfortable and satisfactory country estate. It was testified that the cost of reproduction, less depreciation, of these improvements at the time of the taking on August 4, 1942, was $28,312.

Parcel B consisted of a narrow strip of land between the State Highway and the shore of Long Pond. It was not disputed that both parcels had riparian rights in that pond which added to the value of each.

On this strip were six bungalows which belonged to those who leased the land upon which they rested.

■■ There was the usual dispute between the expert witnesses. Mr. Bannister for the owner stated that in his opinion the fair value was $59,000, which included $29,000 for the land, or an average of $200 per acre. Mr. Yates, for the government, said the fair market value was $20,000, of which $7,000 was for the land. The commissioners awarded $25,692, of which $9,662 was for the land, an average of $66 per acre. A vigorous attack is made upon the testimony of Mr. Yates, chiefly because he had never made any sales in Orange County. But neither had Mr. Bannister. Yates' testimony in this case is compared with that given in other condemnation proceedings in the same area, which, without intimate knowledge of the properties themselves and other facts involved, would show apparent inconsistencies. But all the facts were before the commissioners, they were not bound by the testimony of either expert, and they had a physical view of all the property from which they had the right to form their individual judgment. I might readily fix a larger value on this property. But that would not be the criterion of whether the award was so grossly too small as to smack of partiality or corruption, which is not charged, and which could not properly be asserted. The commissioners did not agree with either expert, and that their award was nearer the Yates figure than the Bannister one would not be unusual nor indicative of error. It was their province to fix the value of the land and the value of the whole property to the extent that the improvements enhanced it. They probably concluded that such value would not equal $200 per acre for land in the mountains, or that the whole value would be such land value plus the sound value of the improvements. Country, or mountain, or summer home, value does not usually approximate that. Usually a purchaser would be more apt to decide what he would pay from a recreational standpoint. The commissioners had the right to use their judgment in these respects, and I can see no legal ground upon which I may interfere.

### Elizabeth G. Graber and Rosanna C. Gibney Property

### Parcels 11 A, D, and 111 A, B, C.

■ These parcels also had riparian rights in Long Pond. They had been used as a farm and in the summer by bungalow and campsite renters.

These five parcels comprised approximately 168.75 acres of land, and there were the following improvements thereon which were valued by the owner's witness Gregory, on the basis of reproduction cost less depreciation as follows:

#### On Parcel 11A

| | |
|---|---:|
| Farm house 8 rooms, halls, bath, steam heat, electric light, hot and cold water, the main part of which was 100 years old—cost of reproduction $14,305 less depreciation $3,405 | $10,000. |
| Barn in poor condition, built about same time as house, cost reproduction $7800 less depreciation $5850 | 1,950. |
| One car garage $485 less $75 | 410. |
| ½ water system supplying this and parcel II E below | 320. |
| Bungalow 17, 1 room and porch, no improvements, cost $214 less $128, 15 years old | 86. |
| Bungalow 5, 3 rooms, store and porch, cost $1697 less $588, 15 years old, no improvements | 1109. |
| | $13,875. |

#### On Parcel 11D

| | |
|---|---:|
| 11 bungalows 6 to 16, inclusive, except one, from 16 to 23 years old, no improvements, cost $8619 less depreciation $3344 | 5,279. |
| | $19,154. |

#### On Parcel 111B

| | |
|---|---:|
| McClellan house, 8 rooms, very old and in poor condition, no improvements, cost $4519 less depreciation $3615 | 904. |
| Shed cost $125 less $100 | 25. |
| | $20,083 |

Rentals aggregating $2,100 per year were received from these properties, and after the death in 1939, of Elizabeth Gibney, the former owner, and the mother of the present owners, the residence was rented in 1939 for $250, and for $50 a month in 1940 and thereafter until the taking in this proceeding. The McClellan house has at all times been rented for $15 a month.

Here again there was the variance between the values given by the same witnesses. None of them attributed specifically any value by reason of the rents. Mr.

Bannister gave special consideration to the 17,248.14 feet of road frontage on all roads, the improvements around the residence, the abundance of water and the lake rights, and stated that in his opinion the property was worth $42,237.50 for the land (at $250 per acre) and $15,500 for the improvements, a total of $57,737.50. While Mr. Yates valued the property as follows:

| | | |
|---|---|---|
| 11D | land $1,300, improvements $ 5,700 | $ 7,000. |
| 11A | land $8,300, improvements $ 5,700 | 14,000. |
| 111 A B C | land $3,500, improvements $ 750 | 4,250. |
| | $13,100 $12,150 | $25,250. |

He valued the land at $100 an acre in parcels 11A and D and at $50 per acre in 111 A, B and C.

It will be seen that the largest spread between these two was in the value of the land; they were comparatively close in the value of the improvements. The commissioners decided that the land was worth $19,653, or about $116 per acre, and that the improvements enhanced that value to the extent of $12,750, a total of $32,403.

A comparison of these figures, and a consideration of the evidence as to the condition of the buildings, that most of the land was rough and mountainous, that but one bungalow had been built in the last fifteen years, although it was testified there was a demand for more, a total lack of proof as to cost of maintenance and other expenses, and the fact that the commissioners inspected all of it, does not show such an absurd award as to shock the conscience of the court.

### Lawrence Gibney Property
### Parcels 11B and E

There were 35.13 acres in these two plots, on E being the residence built in 1926 at a cost of about $10,000, of stone masonry, bungalow type, seven rooms and bath, electrically lighted and hot water heat. Mr. Gregory gave as the sound value, with ½ of the water system shared with his sisters, and the masonry around the grounds, $14,812. There were also two other bungalows on this parcel, Nos. 5 and 6, each with four rooms and a porch, electrically lighted, toilet, but no hot water, in very good condition and built in 1939 or 1940. Mr. Gregory gave $2,360 as the sound value of both, a total on this parcel of $14,457.

On parcel B were three bungalows, Nos. 2, 3 and 4, constructed in 1933 to 1935, 1½ story cottages, 2 and 3 containing three rooms and bath and electric light but no hot water, and No. 4 with five rooms and bath, all in good condition, and the sound value of which, including the water system supplying water to Nos. 2, 3 and 4, Mr. Gregory placed at $8,984.

Mr. Gibney had used the property for farming and gardens, getting ice, and for recreational purposes. He had not, however, had a dairy on it for ten years, and had last sold ice taken from Long Pond eight years before. Both parcels had riparian rights in that pond. The rents received from the bungalows 5 and 6 were $400 a year, from 2 and 3 $600, and from 4, $350. He also received $300 for his residence for each summer season for four years.

Mr. Bannister used the figures testified to by Mr. Gregory—cost of reproduction less depreciation—as to the value of the improvements—$26,156 (there is a difference between them, as I read the testimony, of $1,715 which I cannot reconcile) and placed a value of $12,295.50 on the 35.13 acres, at the rate of $350 per acre, a total of $38,451.50. Mr. Yates' figure was $15,000, of which $3,500 was for land and $11,150 for buildings. The commissioners allowed $6,000 for the land, $14,400 for the buildings, a total of $20,400.

It was testified that most of the land, except the two acres around the house and that near the pond, was rough mountainous land. The figure of $350 an acre, when taken into account with testimony of much less value for land, contiguous might well have justified a reduction in land values. And the considerations expressed as to the other parcels are equally applicable to these. I can see no reason to disturb the award, even though they are less than what the owner claims to have spent. The government is not required to ensure a profit to owners of lands taken in proceedings of this character. It is required to pay only the fair market value, and the law leaves the fixing of that to the com-

missioners appointed. Their conclusion, except in the instances mentioned at the beginning of this opinion, is conclusive here.

### Arthur C. Trautz and William J. Volpasek Bungalows.

■ These bungalows were on land in parcel 1B leased from Mrs. Motak. Their sound value was testified to as $792 and $782 respectively. The Trautz bungalow had three rooms and a porch, electric light, and no heating or plumbing. It was built from ten to twenty years ago, and rested on concrete posts. Yates said it needed paint and was worth $400.

The Volpasek bungalow was substantially similar to the Trautz building, except it had four rooms and a porch, but no improvements. There was dispute whether it was built ten or twenty years ago, and whether it had electric lights. Yates said it was worth $450, and that both were cheaply built, the latter resting on wood posts, and that there was a greater depreciation on this type of property, located in the woods, cheaply constructed and not continuously occupied, than on the usual residential structure.

I cannot see why I should disturb the awards of $450 for each.

2. The specific contention is that there was improperly rejected (A) the federal estate tax return in the estate of Elizabeth Gibney, filed November 4, 1940; (B) the deed from Ferguson to Brown of 193.37 acres dated August 1, 1934; (C) the testimony of one Dalrymple as to an alleged offer made by him, while acting as a negotiator for the government, to Mrs. Motak; and (D) an appraisal made by Ralph Westlake for the government of the Motak property. I see no error in the rejection of any of this testimony.

■ (A) The valuation, whatever it may have been, as stated in the estate tax return, and upon which was computed inheritance taxes payable to the government, was at most a self-serving declaration, made by some one without opportunity of cross examination, and which, if deemed of real importance, could have been proved by the one making the statement as a witness in this proceeding, assuming that such person was competent so to speak. It might have been used to contradict an assertion made by the one who verified the return, but I know of no controlling authority permitting its use to corroborate or to contradict or impeach some other witness.

■ (B) The deed from Henry Albert Ferguson to David Brown, dated August 1, 1934, of a half interest in the 193.37 acres of the Ferguson property, with which property Yates, a government witness, stated he was familiar, was offered to contradict Yates' alleged knowledge of prices of comparable properties. Yates had not testified that he used that sale as the basis for any values to which he had testified. I cannot see either the materiality or competency of the proof. Nor do I think City of Binghamton v. Taft, 125 Misc. 411, 211 N.Y.S. 683, justifies its admissibility. The statement in the deed of its consideration or the number of revenue stamps would not establish value, and certainly what one does not know would not contradict or impeach, unless he had testified he did know. Yates had specifically mentioned the sales which he had considered.

■ (C) Dalrymple's testimony as to negotiations with Mrs. or Dr. Motak as to the purchase of the property or as to what the government considered the property worth, in my opinion would have been incompetent and improper for the reasons that he expressly disclaimed any authority to make any offer, and what he had been told was considered the worth was purely hearsay. His statement that the basis of his statement was an appraisal by Ralph Westlake only emphasizes this. Westlake should have been the witness.

■ (D) The Westlake appraisal was inadmissible for the same reasons. The record shows, however, that government counsel offered to consent that Westlake's appraisal be used as an exhibit as a part of defendants' affirmative case and that defendants' counsel refused that opportunity, stating that he would like to use it as rebuttal to Yates' testimony solely. It was not competent for the latter purpose.

### 3. School House.

■ The award was $1,900 of which $100 was for the land. The testimony as to value varied from $3,500 for the owner, of which $500 was for the land (a plot approximately 100x120, containing .27 of an acre), and $1,200 for the government, of which $100 was for the land. Mr. Gregory placed the sound value at $3,475.

It was of frame construction and contained a classroom and two cloakrooms, and was heated by a hot air furnace. It was built in 1922 and was in apparent good condition. It had not been used as a school for some time, probably because of the centralization of school districts in that vicinity.

I do not think I would be justified in interfering with this award, unless the contention of counsel, that a wrong theory was adopted, can prevail.

It is insisted that in evaluating so-called service properties, such as schools and churches, because of the lack of other and better evidence than reproduction cost, the award should be based on the market value of the land plus the cost of reproduction less depreciation of the structures.

The contention cannot be sustained for two reasons—the school use had ended and, while reproduction cost depreciated has been held one of the bases upon which value may be determined, it has not been held, as to a property like that here involved, that it is the sole criterion. In this instance the fair market value of the land as it was enhanced by the structure upon it would seem to be the proper criterion. The commissioners did not err in using that, and the result is not so insufficient as to justify it being set aside. The school was on a side road and at the time of taking was practically inaccessible for school purposes or use in view of the change in the district.

An order and judgment may be settled on notice confirming the awards.